IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| In re: | ) | Case No. 23-30352 |
| | ) | (Chapter 11) |
| DRAIN SERVICES INC. | ) | |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |

**MOTION FOR LEAVE TO USE CASH COLLATERAL**

Comes now Drain Services Inc. ("Drain Services" or the "Debtor"), by and through undersigned proposed counsel, pursuant to Section 363 of Title 11 of the United States Code and Federal Rules of Bankruptcy Procedure 6003 and 6004, and moves this Honorable Court for leave to use cash collateral on an interim and final basis, and in support thereof states as follows:

**I.    Introduction**

Earlier this afternoon, Drain Services filed a petition for bankruptcy relief mere moments before the commencement of a state court hearing in which a secured creditor sought an injunction that would have left the Debtor without the ability to use its cash on hand. Had this case not been filed, and had the injunction been granted, Drain Services – a vibrant business that garners a healthy revenue stream – would have been *de facto* shuttered. Rather than risk that fate, the Debtor has elected to reorganize under Title 11 of the United States Code (the "Bankruptcy Code"), knowing that promising indicia of forward-looking income can translate into a plan that benefits all creditors while keeping a small business alive and well. Setting out about that hard work, though, necessarily requires the use of cash collateral – if there is any.

The composition of the Debtor's cash on hand is, however, slightly unorthodox. The Debtor closed business last week with a bank account balance of -$20,774.32. Early this morning, three payments were routed to the Debtor's bank, totaling $205,575.00. As of the filing of the

1

petition herein, those payments were listed as "pending," with the bank indicating it would setoff the negative balance against the new funds. If the "pending" funds were cash collateral before they become fully available to the Debtor, then there is more than $184,000.00 in liened monies to be addressed under Section 363 of the Bankruptcy Code. If the "pending" funds were not cash collateral until they become fully available to the Debtor, the whole of this motion is superfluous.

There exists a strong argument, based on the plain language of Section 363 of the Bankruptcy Code, that receivables are not cash collateral, since such assets are not "cash" and are not yet part of the construct of a "deposit account." Case law appears to be conflicting on this point, with an absence of authority in this Honorable Court. But the Debtor is hardly willing to wager its compliance with the rigors of the Bankruptcy Code on a disputable interpretation of statutory text, and failing to seek leave to use cash collateral would be doing just that.

Perhaps more importantly, Drain Services enters bankruptcy with approximately $2.1m in assets and just under $1.2m in liabilities, ensuring a construct whereby all secured creditors may be adequately protected through the customary extension of replacement liens – to the extent cash collateral is extant. So Drain Services asks this Honorable Court to (i) adjudicate whether or not there is cash collateral *sub judice*; and (ii) provide automatically perfected post-petition replacement liens, on the Debtor's assets (saving and excepting Chapter 5 causes of action), to the extent such cash collateral is found to be present.

**II.    Standard**

The permitting of cash collateral usage is specifically contemplated by Section 363(e) of the Bankruptcy Code, which provides:

> Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or

2

condition such use, sale, or lease as is necessary to provide adequate protection of such interest.

11 U.S.C. § 363(e).

The Federal Rule of Bankruptcy Procedure openly contemplate relief, such as that sought herein, being afforded on an emergency basis upon the commencement of a case, permitting orders to be entered during the first 21 days of a given case, "to the extent that relief is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003.

**III.     Argument: It is Not Clear That There Exists Cash Collateral**

As a starting point, the factual idiosyncrasies of this case – highlighted *supra* and to be expounded upon at an evidentiary hearing upon this motion[1] – are somewhat odd. It does not appear the Debtor had unmitigated access to "pending" funds in its bank account when this case was filed, and Drain Services may thusly have entered bankruptcy with (i) no cash on hand; and (ii) a very large receivable in the final stages of being collected. If so, focus shifts to whether or not that receivable would constitute "cash collateral." The Debtor acknowledges there is a split of authorities as to this issue, but equally urges a plain reading of the Bankruptcy Code suggests there to not be any cash collateral in this case.

Section 363 of the Bankruptcy Code familiarly defines "cash collateral" to include specific items and the proceeds of specific items:

> In this section, "cash collateral" means cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property and the fees, charges, accounts or other payments for the use or occupancy of rooms and other public facilities in hotels, motels, or other lodging properties subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title.

---

[1] The Debtor anticipates filing a proposed budget before a hearing is held.

11 U.S.C. § 363(a).

As noted by the United States District Court for the District of North Dakota, "[t]he 'first step in interpreting a statute is determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case.' If the language of the statute is clear, 'the inquiry ceases.'" *North Dakota v. United States*, 567 F. Supp. 3d 1111, 1117–18 (D.N.D. 2021) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997); *Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 450 (2002)).

Here, the definition of "cash collateral" expressly includes (i) actual cash; (ii) "deposit accounts," and (iii) monies garnered from the "use or occupancy of rooms and other public facilities in hotels, motels, or other lodging properties." 11 U.S.C. § 363(a). The definition says nothing about "accounts receivable" other than those occasioned by the use of real property. And the singling out of real property receivables is noteworthy, inasmuch as "[a] standard axiom of statutory interpretation is *expressio unius est exclusio alterius*, or the expression of one thing excludes others not expressed." *Watt v. GMAC Mortg. Corp.*, 457 F.3d 781, 783 (8th Cir. 2006) (citing *Jama v. INS*, 329 F.3d 630, 634 (8th Cir. 2003)).

One bankruptcy court has flatly concluded, *inter alia*, "accounts receivable are not 'cash collateral' under the Bankruptcy Code." *In re Nat'l Fin. Alternatives, Inc.*, 96 B.R. 844, 848 (Bankr. N.D. Ill. 1989). In reaching that firm holding, the *Nat'l Fin. Alternatives* Court noted:

> Section 363(a) limits "cash collateral" to "cash, negotiable instruments, documents of title, securities, deposit accounts or other cash equivalents." The legislative history reflects that other types of transitory property were deliberately omitted from the definition. As originally proposed by the House, § 363 dealt with "soft collateral" rather than "cash collateral," and § 363(a) defined "soft collateral" as "inventory, accounts, contract rights, general intangibles, cash, negotiable instruments, documents of title, securities, or chattel paper in which the estate and an entity other than the estate have an interest." The Senate proposed the present language of § 363, and the House concurred "to remove limitations that were placed

4

> on the use, lease, or sale of inventory, accounts, contract rights, general intangibles, and chattel paper by the trustee or debtor in possession."

*In re Nat'l Fin. Alternatives, Inc.*, 96 B.R. at 848 n. 7 (quoting House Report No. 95–595; 95th Cong., 1st Sess. 344–45, reprinted in 1978 U.S. Code Cong. & Ad. News 5787, 5963, 6301; H.R. 8200, 95th Cong. 2d Sess., 124 Cong. Rec. 32, 396 (1978)).[2]

The reasoning of the *Nat'l Fin. Alternatives* Court is persuasive, and the plain text of Section 363 is notably devoid of any reference to "receivables" or "accounts receivable." There is no doubt but that various creditors have liens on the Debtor's accounts receivable but, equally, there does not appear to be as strong an argument that Drain Services requires leave of court to use the funds transmuted from those receivables. And it is thusly urged that this motion should be denied, without prejudice to any creditor's right to subsequently file a motion for adequate protection under Section 363(e).

### IV.     Argument: If There is Cash Collateral, Use Should be Permitted

If, *arguendo*, the "pending" funds do constitute "cash collateral," utilization of those monies ought to be permitted, on an interim and final basis, on the sole condition that secured creditors be furnished with automatically-perfected replacement liens sufficient to ensure their respective positions remain as robust as they were when the petition for relief was docketed. This is an estate where the assets nearly double the liabilities, with more than $1 million in valuable receivables – believed to be fully collectible – being amongst those assets. Replacement liens will assuredly offer the "adequate protection" contemplated by Section 363(e), without the necessity

---

[2] *But see In re Ravenwood Healthcare, Inc.*, 2012 WL 2353779, at *2 (Bankr. M.D. La. 2012) (defining "cash collateral" to include accounts receivable); *In re Wise Transp., Inc.*, 148 B.R. 52, 53 (Bankr. N.D. Okla. 1992) ("After filing Ch. 11, Wise Inc. sought this Court's permission to use the accounts receivable, which were cash collateral, to fund Wise Inc.'s post-petition business operations.").

5

of any further protective measures being imposed upon a Debtor that is seeking to quickly reorganize through the expedited process of a Subchapter V bankruptcy.

As noted by the United States Court of Appeals for the Eleventh Circuit, "Adequate protection is a means of preserving a creditor's interest in secured collateral subject to post-petition use by the debtor." *In re Carpet Center Leasing Co., Inc.*, 991 F.2d 682, 686 (11th Cir. 1993). What constitutes adequate protection is determined on a case-by-case basis. *See, In re O'Connor*, 808 F.2d 1393, 1396-97 (10th Cir. 1987); *In re Martin*, 761 F.2d 472 (8th Cir. 1985).

Simply stated, adequate protection is necessary only to the extent the use of the creditor's collateral will result in a decrease in "the value of such entity's interest in such property." 11 U.S.C. §§ 361, 363(e). *See also, United Savings Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 370-73 (1988) (the "interest in property" entitled to protection is "the value of the collateral" securing the claim).

Section 361 of the Bankruptcy Code provides that adequate protection may be provided by (i) "requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the … use … under section 363 of this title … results in a decrease in the value of such entity's interest in such property," (ii) "providing … an additional or replacement lien to the extent that such … use … results in a decrease in the value of such entity's interest in such property," or (iii) "granting such other relief . . . as will result in the realization by [an] entity of the indubitable equivalent of [the] entity's interest in such property." 11 U.S.C. § 361. *See also*, *In re JKJ Chevrolet, Inc.*, 190 B.R. 542, 545–46 (Bankr. E.D. Va. 1995), subsequently aff'd, 117 F.3d 1413 (4th Cir. 1997) ("Section 361 of the Code provides three non-exclusive means of providing adequate protection. These alternatives include requiring the debtor to make a cash payment or periodic cash payments to the extent of a decrease in the value of the property. Alternatively, the

6

debtor may provide an additional or replacement lien to the extent of a decrease in the value of the property. Lastly, adequate protection may be provided by granting other relief that will result in the indubitable equivalent of the interest in the property.") (citing 11 U.S.C. § 361(3)).

Here, there are only four secured creditors, of whom only three have liens on cash and cash equivalents (with the remaining creditor holding a lien on a specific piece of equipment). Choice Financial Group appears to be in first position, being owed approximately $368,000.00; the United States Small Business Administration has the second-in-time UCC filing, correlating to a debt of roughly $495,000.00; and the Internal Revenue Service has a tax lien for $46,776.58 plus whatever interest, *vel non*, may be additionally secured by virtue of that lien.

The Debtor's accounts receivable, alone, exceed $1,000,000.00 – with the majority of those funds being due from a prime contractor on a government contracting job being carried out for the State of Wisconsin. The creditworthiness of Dairyland is hardly in question, nor is there reason to believe any of the other receivables are likely susceptible to dishonor. And the Debtor will, of course, soon have more than $180,000.00 in cash on hand as well, together with more than $400,000.00 in equipment.[3]

Stated otherwise, the Debtor has plenty of collateral securing the three at-issue debts. A replacement lien is likely not needed to ensure these creditors maintain their robust positions, but a replacement lien is nonetheless suggested out of recognition that some provision should be made for any diminution in security value, no matter how hypothetical such diminution may be.

---

[3] The equipment is scheduled at $864,912.00, but the scheduled values are acquisition costs, not depreciated present values. A value of $400,000.00 is assigned in the interests of conservatism, without prejudice to the positions that may be taken in connection with any subsequent motions to value liens or other proceedings in this case.

## V. Conclusion

WHEREFORE, the Debtors respectfully pray this Honorable Court (i) find there to not be any cash collateral *sub judice*; (ii) in the alternative, permit the Debtor to use cash collateral of the secured creditors, on the terms proposed *supra*; (iii) enter an order permitting such relief on an interim basis, with said order being immediately effective, per the allowance of Federal Rule of Bankruptcy Procedure 6004(h); and (iv) afford such other and further relief.

Respectfully Submitted,

Dated: October 2, 2023  By:  /s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
The Dakota Bankruptcy Firm
1630 1st Avenue N
Suite B PMB 24
Fargo, North Dakota 58102-4246
Phone: (701) 394-3215
mac@dakotabankruptcy.com
*Proposed Counsel for the Debtor*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 2nd day of October, 2023, a copy of the foregoing was served electronically upon filing via the ECF system. A copy will be served on the mailing matrix herein on October 3, 2023, with a subsequent certificate of service to be then filed.

I FURTHER CERTIFY that a copy of the foregoing is being sent, of even date herewith, via e-mail, to (i) John Schroeder, Esq., the attorney believed to be acting as counsel for Choice Financial Services in this case; and (ii) Kent Rockstad, Esq., the attorney believed to be acting as counsel for the United States in this case.

/s/ Maurice B. VerStandig
Maurice B. VerStandig

8