IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 23-30352 |
| Drain Services Inc. | ) | (Chapter 11) |
| | ) | |
| Debtor. | ) | |
| | ) | |

### OBJECTION TO MOTION FOR LEAVE TO USE CASH COLLATERAL
### AND TO PAY PRE-PETITION WAGES

**Choice Financial Group**, ("Choice Bank") a creditor of the above-named debtor Drain Services Inc. ("Debtor"), by and through its undersigned counsel, and hereby objects to the Motion for Leave to Use Cash Collateral, filed by the Debtors on October 2, 2023 (Doc. # 8 and hereafter referred to as "Cash Collateral Motion") and Motion for Leave to Pay Pre-Petition Employee Wages to One Person, filed by the Debtors on October 2, 2023 (Doc. # 9 and hereafter referred to as "Wages Motion" and collectively with the Cash Collateral Motion the "Motions"), upon the following grounds:

**1.** Choice Bank objects to the Debtor's characterization of the Cash Collateral Motion as being superfluous. The accounts that lead to the payments deposited in the Debtor's BankNorth bank account are proceeds of the accounts receivable that Choice Bank claims a first-priority security interest over. The money deposited to BankNorth on October 2, 2023, constitutes proceeds of the accounts and part of Choice Bank's collateral. A leading treatise notes the following related to collection of accounts post-petition:

> If collateral that is not cash collateral is converted to cash or cash equivalents during the case, and if the resulting cash or cash equivalents become collateral under applicable nonbankruptcy law and section 552, the collateral becomes cash collateral subject to the provisions of section 363(c). Although section 552(a) abrogates after-acquired property clauses in security agreements, after-acquired property is subject to a prepetition security

interest if the agreement covers such property and the property is proceeds, products, offspring, rents or profits of property subject to the prepetition agreement or hotel revenues generated by such property, unless the court orders otherwise. Thus, for example, the trustee may sell inventory or collect accounts in the ordinary course of business without court approval, since these are not cash collateral, but the cash proceeds will be "cash collateral," even if acquired by the trustee after the commencement of the case, because the cash is proceeds of the inventory or receivables, unless the court orders otherwise under section 552(b).

3 Collier on Bankruptcy ¶ 363.03 (16th 2023) (citing United Virginia Bank v. Slab Fork Coal Co. (In re Slab Fork Coal Co.), 784 F.2d 1188, 14 C.B.C.2d 471 (4th Cir. 1986), cert. denied, 477 U.S. 905, 106 S. Ct. 3275, 91 L. Ed. 2d 565 (1986)). Here, the cash on deposit constitutes the proceeds of the accounts on which Choice Bank has a lien under its security agreements with Debtor. The Debtor's use of these proceeds should be subject to the provisions of 11 U.S.C. § 363(c). Id.

Additionally, the case cited by Debtor in support of its proposition that accounts receivable not yet collected do not meet the definition of "cash collateral", and therefore does not require a motion under section 363(c) for the Debtor's use of the same, provides the opposite holding. In re Nat'l Fin. Alternatives, 96 B.R. 844, 849 (Bankr. N.D. Ill. 1989). In National Financial Alternatives, the court held proceeds of accounts receivable, when collected post-petition, are cash collateral subject to section 363(c):

> Finally, the issues raised by the Bank and the IRS do, in the end, affect NFA's use of cash collateral. Section 552(a) of the Bankruptcy Code generally provides that "property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case." However, under § 552(b), the Bank's interest in NFA's accounts receivable would extend to the "proceeds" of their collection post-petition. Such proceeds would be "cash collateral" under § 363(a) of the Code, which, pursuant to §§ 363(c)(2), (c)(4) and *(o)*, NFA would be required to segregate, and refrain from using, until it obtains either the consent of each entity that has an interest in the proceeds or a court order allowing the use, conditioned on provision of adequate protection.

Id. Here, like in National Financial Alternatives, the Debtor currently has an obligation to segregate and refrain from using the proceeds of the accounts covered by Choice Bank's security interest.

Page **2** of **4**

2. Debtor fails to support the Motions with any indication of a need for interim or final relief for the use of cash collateral or payment of the prepetition wages. There is no budget for the proposed use of the cash collateral. There is nothing filed with the Motions to indicate that use of the cash collateral will return a greater benefit to the creditors through the operation of the business versus its liquidation. Without any idea of a proposed use of the cash collateral by Debtor, it is impossible for Choice Bank to intelligently respond. Without this information, Choice Bank would submit that payment of those funds to Choice Bank in partial satisfaction of its security interest would be the best use of the cash collateral.

3. Debtor's assertions concerning collateral values and equity cushions are not believable. On information and belief, approximately half of the existing receivables stem from subcontracts from the year 2021 and will be subject to defenses and/or offsets in favor of the prime contractors on those jobs. Specifically with regard to a project in Wisconsin, Debtor's Vice President Kevin Cameron has indicated to personnel of Choice Bank that Drain Services, Inc. did not substantially perform the work called for under the contract, walking off of the job after four days due to a dispute with the prime contractor. While the credit worthiness of the government entities that are ultimately responsible to pay might not be in question, the collectability of the accounts that stem from subcontracts are not a foregone conclusion, particularly when the Debtor may or may not have completed the work and relies on the credit worthiness of the prime contractors and not the governmental entities.

4. Debtor fails to disclose any anticipated accounts that will arise after the commencement of the case that it would offer to Choice Bank a replacement lien upon. There is nothing to show that any replacement lien will in fact be to the benefit of Choice Bank.

    **5.**      There is nothing to show that there is any relief under the Motions is necessary to avoid immediate and irreparable harm.

    **6.**      Choice Bank objects to the Wages Motion to the extend its cash collateral would be used to pay the wages. Debtor also has failed to show how expedited relief is necessary for the Wage Motion.

    **WHEREFORE**, Choice Bank respectfully requests that this Honorable Court issue an Order DENYING Debtor's Motions on an interim and final basis; and for such other and further relief as this Court deems just and proper.

Dated: October 5, 2023

/s/*John D. Schroeder*
**JOHN D. SCHROEDER  (ND ID #07147)**
jschroeder@northdakotalaw.net
ZIMNEY FOSTER P.C.
3100 South Columbia Road, Ste 200
Grand Forks, ND 58201
Phone:  701/772-8111   Fax:  701/772-7328
Attorneys for Choice Financial Group

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| In re: ) | |
| ) | Case No. 23-30352 |
| Drain Services Inc. ) | (Chapter 11) |
| ) | |
| Debtor. ) | |
| ) | |

### DECLARATION OF SERVICE

**KAREN SYRSTAD,** a legal assistant in the office of Zimney Foster P.C., 3100 South Columbia Road, Ste. 200, Grand Forks, ND 58201, is of legal age and not a party to or interested in the above-entitled matter and declares, that on the October 5, 2023, she served the following:

1. **OBJECTION TO MOTION FOR LEAVE TO USE CASH COLLATERAL AND TO PAY PRE-PETITION WAGES**
2. **THIS DECLARATION OF SERVICE**

to the people who are Filing Users, by automatic e-mail notification pursuant to the Electronic Case Filing System and this notice constitutes service, and by sending the same in a postage paid envelope addressed to each person named below, at the address stated below, which is the last known address of the addressee, and aby depositing said envelop in the United States mail in Grand Forks, North Dakota.

**Maurice VerStandig**
The Dakota Bankruptcy Firm
1630 1st Avenue N
Suite B PMB 24
Fargo ND 58102
mac@mbvesq.com
**Attorney for Debtor**

**Drain Services Inc.**
575 County Road 10
Mapleton ND 58059

**Sarah J. Wencil**
Office of the U.S. Trustee
Suite 1015 U.S. Courthouse
300 South Fourth Street
Minneapolis MN 55415
sarah.j.wencil@usdoj.gov

**Robert B. Rashcke**
Assistant U.S. Trustee
Suite 1015 U.S. Courthouse
300 South Fourth Street
Minneapolis MN 55415

And I declare, under penalty of perjury, that the foregoing is true and correct.

1

Dated: October 5, 2023 at Grand Forks, North Dakota

*/s/ Karen Syrstad*
**KAREN SYRSTAD**

2