IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| In re: ) | |
| ) | Case No. 23-30352 |
| Drain Services Inc. ) | (Chapter 11) |
| ) | |
| Debtor. ) | |
| ) | |

**CHOICE FINANCIAL GROUP'S OBJECTION TO CONFIRMATION OF DRAIN SERVICES, INC.'S SUBCHAPTER V PLAN OF REORGANIZATION**

**Choice Financial Group**, ("Choice Bank") a creditor of the above-named debtor Drain Services, Inc. ("Debtor"), by and through its undersigned counsel, hereby objects to the confirmation of Drain Services, Inc.'s Subchapter V Plan of Reorganization ("Plan") (Doc. No. 69), upon the following grounds:

I. **DEBTOR CANNOT SATISFY ALL ELEMENTS NECESSARY FOR CONFIRMATION OF THE PLAN.**

The burden rests with the Debtors, as plan proponents, to establish all of the elements necessary for confirmation under Chapter 11 by a preponderance of the evidence. In re Bryant, 439 B.R. 724, 737-38 (Bankr. E.D. Ark. 2010). The Debtor must show "all of the applicable requirements of section 1129(a) of this title, other than paragraphs (8), (10), and (15) of that section, are met with respect to a plan . . . if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan." 11 U.S.C. § 1191(b). Here, the requirements of section 1129(a) as modified by 1191(b) have not been met by the Debtor.

Page **1** of **11**

Requirements for confirmation of a Chapter 11 Plan include, but are not limited to, the following:

1. The Plan complies with the applicable provision of the Bankruptcy Code.
2. The proponent of the plan complies with the applicable provision of the Bankruptcy Code.
3. The plan has been proposed in good faith and not by any means forbidden by law.
4. Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan.
5. The plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan, including that the Debtor generally pay in to the plan its projected disposable income over a three or five year period.

11 U.S.C. §§ 1129 (a)(1), (2), (7), and (11); 11 U.S.C. § 1191(b), (c). Here, the Plan fails to meet these requirements.

### a. *The Plan and the Debtor are not complying with the Applicable Provisions of the Bankruptcy Code, and thus do not meet Section 1129(a)(1) or (2).*

Sections 1129(a)(1) and (2) of the Bankruptcy Code provide that both the plan and the proponent of the plan must comply "with the applicable provisions" of the Bankruptcy Code. Choice Bank objects to the Plan because the Plan has a number of deficiencies and the Debtor has failed to comply with the Bankruptcy Code.

First, the Debtor is not complying with the Bankruptcy Code and this court's prior orders on use of cash collateral. On October 6, 2023, the Court granted the Debtor authorization to use not more than $20,000 in cash collateral interim period, October 2, 2023, to October 17, 2023. (Doc. # 33.) Under 11 U.S.C. § 363(c) the Debtor needs permission of secured creditors or an order of the court to use cash collateral. From October 2, 2023 to October 17, 2023, the Debtor used $85,386.87 in cash collateral, far exceeding what was authorized by the court. Additionally, the Court granted the Debtor final authority to use not more than $113,000 in cash collateral between October 17, 2023, and December 31, 2023. (Doc. # 64.) Between October 17, 2023, and December 2, 2023, the Debtor has used the entire $184,800.68 in cash collateral that existed on the petition date. Note that the only deposits of collected funds since the commencement of the case and December 2, 2023, has been a total of $48,666.16 ($5,000 on October 26, 2023, $7,000 on October 30, 2023, $5,000 on November 15, 2023, $16.16 on November 20, 2023, and $31,650 on November 21, 2023). Also, the Debtor has made adequate protection payments to Choice Bank of $25,000.00 on October 20, 2023, and $10,000.00 on November 10, 2023. The remaining balance in the Debtor's checking account on December 2, 2023, was $24,475.11, showing that the Debtor has spent out of the cash collateral and the additional funds collected, less adequate protection payments to Choice Bank, a total of $173,991.73 between October 2, 2023 and December 2, 2023. This is $40,991.73 more than was authorized by the Court's orders granting use of cash collateral. (Doc. ## 33, 64.) Debtor has not abided by section 363(c) of the Bankruptcy Code.

Second, the Debtor fails to provide for the payment of its projected disposable income into the Plan. Debtor's projections indicate significant reserves for each year, yet does not propose to pay those to creditors. (Doc. # 71.) Debtor's projections indicate $350,403.15 in

reserves/miscellaneous over the course of the Plan but makes no provision for payment of this to creditors under the Plan.

Additionally, the Plan provides that the Debtor retains the right to re-amortize the payments on Choice Bank's claim if the Debtor obtains payment of an insurance claim that is part of Choice Bank's collateral or it the Debtor elects to make additional prepayments to Choice Bank. (Doc. # 69, p. 12.) The ability of the Debtor to re-amortize the payments to Choice Bank further shows that the Debtor will not be dedicating its projected disposable income to Plan payments.

Third, the Debtor has failed to file accurate schedules in the case. The Debtor in support of its initial schedules, and in support of its initial cash collateral motions, claimed significant equity in the estate. However, now that it has filed the Plan, it claims that the estate would be insolvent if converted to a chapter 7. The Debtor is attempting to have its cake and eat it too, by claiming an abundance of value/security when that is to the benefit of the Debtor when seeking a cash collateral order, but that the estate is insolvent when showing that the Debtor need not fully repay all claims. The instructions for Official Form 206A/B (Schedule A/B) indicate that the listing of "Current Value" should be essentially a fair market value, and give several suggestions on how that might be determined:

> In this form, the debtor must report the current value of the debtor's interest in any property that it owns in each category. Current value is sometimes called fair market value and, for this form, it is the fair market value as of the date of filing the bankruptcy petition. Current value is how much the property is currently worth, which may be more or less than the amount the debtor paid for the property or the book value of the property.

Debtor's original schedules indicated an original cost value and claimed total assets of $2,158,262.87 (Doc. # 6.). Amended Schedules were filed on October 17, 2023, and indicate claimed total assets of $1,682,105.02. (Doc. # 51.) Finally, it must be noted that the principals of the Debtor, sole member Caitlyn Cameron and vice president Kevin Cameron, have filed for

protection under the Bankruptcy Code with this Court, Case No. 23-30369. In the Camerons' individual bankruptcy case, they have indicated a value for the Debtor as of October 14, 2023, of -$258,470.04, with claimed assets in Drain Services, Inc. of $1,143,415.05. In sum, the Debtor has failed to accurately disclose its financial affairs.

Finally, the Plan at section 8.11 purports to give the court authority to approve a modified plan without giving notice or conducting a hearing. Under section 1193 of the Bankruptcy Code, any post-confirmation modifications of a plan may only be given pursuant to notice and hearing. Further, the Plan's provision on modifications without notice and hearing do not qualify or quantify what modification would be "nonmaterial". The Debtor may view some defect, omission, or inconsistency as nonmaterial, but a creditor may well view such as a material term of the Plan. Further, the provision permitting modification that renders the terms more favorable to creditors may prejudice other parties in interest. For instance, a modification that would be more favorable to a certain group of creditors may be viewed or have the effect of being detrimental to another group of creditors. Section 8.11 of the Plan violates the requirements of section 1193 of the Bankruptcy Code.

### b. *The Plan has not been proposed in good faith, and thus does not meet Section 1129(a)(3).*

Section 1129(a)(3) of the Bankruptcy Code requires that a "plan [be] proposed in good faith and not by any means forbidden by law." To satisfy this good faith test, the debtor must show that "there is a reasonable likelihood that the plan will achieve a result consistent with the standards prescribed under the Code." Hanson v. First Bank, 828 F2d 1310, 1315 (8th Cir. 1987). Choice Bank believes that Debtor cannot meet its burden by satisfying the good faith requirement by a preponderance of the evidence.

### 1) The Plan fails to state essential terms.

A plan of reorganization in a Chapter 11 bankruptcy becomes the controlling document between the debtor and the creditor. JCB, Inc. v. Union Planters Bank, NA, 539 F.3d 862, 870 (8th Cir. 2008). It is construed as the new contract between the parties and an order of the court. Id. However, this Plan fails to specify essential terms for the kind of plan being proposed. The terms and conditions contained in Choice Bank's promissory notes, security agreements, and other loan documents are essential to protecting its interests in the pledged collateral and to the enforcement of payment obligations. Debtor has made no attempt to insure the inclusion of these essential terms into this Plan by incorporating any of Choice Bank's existing loan documents into the Plan.

The Plan contains no provisions whatsoever regarding its impact on the many affirmative obligations and negative covenants necessarily included in security agreements, promissory notes and other loan documents. For example, the Plan does not address terms of default for any non-payment default, enforcement mechanisms and remedies, the right to accelerate in the event of default, foreclosure rights, application of sale proceeds upon sale, issues relating to hazardous substances, the indebtedness secured by the loan document terms, maintenance obligations, payment of taxes, keeping the property free of other liens and encumbrances, application of insurance and condemnation awards, the assignment of rents and many others. These covenants and terms are crucial to a continuing relationship and the allocation of risks between creditors and the Debtor. As presented, the Plan, at best, simply ignores these obligations and rights, and at worst does away with them as a practical matter. Given the effect that a confirmed plan has as being akin to the operative contract between the parties, id., this is a glaring injustice and impairment of Choice Bank.

**2) Plan permits Debtor to modify the Plan in contravention of section 1193 of the Bankruptcy Code.**

As noted above, section 8.11 of the Plan violates the requirements of section 1193 of the Bankruptcy Code.

**3) Debtor has inappropriately used cash collateral for the benefit of the Debtor's principals.**

The Debtor's use of cash collateral has exceeded that permitted in the court's prior orders, as noted above. Additionally, the Debtor has used cash collateral to pay for expenses to benefit the Debtor's principals personally. There are charges being made and paid to a personal "Self Lending" account, which the Debtor will not provide documentation for. Additionally, there are charges that are of a personal nature that cash collateral has been used for, including the following:

| Date | Description | Amount |
|---|---|---|
| 11/8/2023 | GREATWOLF LDG BLOOMINBLOOMINGTONMNUS | 518.63 |
| 11/6/2023 | GREATWOLF LDG BLOOMIN844-8289653 MNUS | 669.94 |
| 11/6/2023 | Pending: GREATWOLF LDG BLOOMINBLOOMINGTONMNUS | 555.43 |
| 11/3/2023 | PS4450 SCHEELSFARGO FARGO ND | 465.45 |
| 10/23/2023 | PS2547 SPFLYCATCHER INCPAINTINGLULU. NY | 173.9 |
| 10/23/2023 | PS4457 SPDOODLEDAZZLESHTTPSDOODLEDADC | 46.85 |

Debtor has indicated that the charges at Great Wolf Lodge, totaling $1,744.00 were for a business trip to bid on two jobs in the Minneapolis area and Mankato, Minnesota area, which include the Mr. and Mrs. Cameron and their two children. Debtor has not provided any breakdown of those charges if they were for lodging, entertainment, or meals, nor has the Debtor provided a specific timing of what days those charges covered. Choice Bank believes these are all unreasonable charges.

Debtor has also indicated that the Scheels purchase is for winter workwear and boots for Mr. Cameron. However, there are tax issues with this and whether those types of expense are properly made for an employee. Finally, the two charges on October 23, 2023, the Debtor has

Page 7 of 11

indicated were personal in nature to the Camerons. There has been no recoupment of those from the Camerons by the Debtor.

For the above-stated reasons, Choice Bank alleges that the Debtor cannot satisfy in demonstrating that the Plan was proposed in good faith.

### c. *The Plan is not Feasible.*

In order for the Plan to be confirmed, the Plan must be feasible. Section 1129(a)(11) requires Debtor to establish that: "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan."

"Feasibility is a mandatory requirement for confirmation." In re Made in Detroit, Inc., 149 B.R. 170, 175 (Bankr.E.D. Mich. 2003). "Feasibility determinations must be firmly rooted in predictions based on objective facts." In Re Clarkson, 767 F.2d 417, 420 (8th Cir. 1985). "Sincerity, honesty, and willingness are not sufficient to make the plan feasible, and neither are any visionary promises. The test is whether the things which are to be done after confirmation can be done as a practical matter under the facts." Id.

The largest obstacle that appears to be in the way of feasibility of this Plan is the lack of future funding for the Debtor's operations. The Debtor has as of December 2, 2023, overspent its cash collateral budget for the remainder of the year by $40,991.73. The Debtor only has $24,475.11 in remaining funds on hand. The Debtor's prior cash collateral budget, shows that the Debtor should have expenses of $59,348.44 from December 4-31. (Doc. # 50-1.) As shown above, the Debtor has only collected $48,666.16 since the commencement of this case. Pursuant to the court's prior orders granting the use of cash collateral, Choice Bank was granted replacement liens in the cash to be collected by debtor from the use of Choice Bank's cash collateral. The Debtor's future

use of cash collateral is going in a negative position and will leave the Debtor without an ability to fund operations.

### d. The Plan Fails to Provide Choice Bank with Adequate Protection.

The Plan does not provide Choice Bank adequate protection in return for the use of its cash collateral. The Plan does not provide a clear statement what Choice Bank will retain in the way of liens in the Debtor's cash collateral. There is no recitation of any of the lien documents in the Plan and there is not a clear statement that these liens continue to secure Choice Bank's claims.

Choice Bank believes the Plan could be used by Debtors to strip Choice Bank into an under-secured position. The Plan appears to allow the Debtor's accounts receivables and cash, all of which are Choice Bank's cash collateral pursuant to the Court's orders granting use of cash collateral, to fund payments to other creditors and administrative expense claims, without anything in return. The Debtor may not use cash collateral without first gaining the approval of the Bankruptcy Court. 11 U.S.C. § § 363(c)(2)(B) & (e). The adequate protection of secured creditor's interests in cash collateral applies both pre-confirmation and post-confirmation. See In re Dispirito, 371 B.R. 695, 699 (Bankr. D.N.J. 2007) (failure to provide adequate protection violates requirement that secured creditor is entitled to lien retention). The Debtor's Plan, however, does not provide Choice Bank adequate protection in return for Debtor's retaining and using to pay others Choice Bank's cash collateral. The Plan also allows a deferral of any payments to Choice Bank so that administrative expenses can be paid ahead of Choice Bank and directly out of cash collateral.

### e. The Plan discriminates unfairly, and is not fair and equitable, with respect Choice Bank.

First, the Plan fails to provide that the payment of its projected disposable income will be paid into the plan for the benefit of the Debtor's creditors, as required by section 1191(c)(2)(a).

The Plan provides that reserves/miscellaneous that are being projected by the Debtor are kept by the Debtor.

Second, the Plan does not meet the requirements of section 1129(b)(2)(A) of the Bankruptcy Code as to Choice Bank. The options available to a plan proponent under section 1129(b)(2)(A) are as follows:

> The **secured creditor retains its lien** on the property and receives deferred cash payments; 11 U.S.C. § 1129(b)(2)(A)(i);
>
> The debtor sells the property free and clear of liens subject to 11 U.S.C. 363(k) – which permits the **creditor to credit-bid at the sale and provides the creditor with a lien on the sale proceeds.** 11 U.S.C. § 1129(b)(2)(A)(ii); or
>
> The plan may provide the secured creditor with the **"indubitable equivalent"** of its claim. (11 U.S.C. § 1129(b)(2)(A)(iii)

While any one of these three alternatives are available avenues to cramdown an objecting secured creditor, the "indubitable equivalent" alternative is not available for situations that squarely fall in either section 1129(b)(2)(A)(i) or section 1129(b)(2)(A)(ii). RadLax Gateway Hotel, LLC v. Amalgamated Bank, 132 S.Ct. 2065, 2070-71 (2012).

Here, the Plan does not comply with any of the alternatives. The Plan is not a liquidating plan to which section 1129(b)(2)(A)(ii) would apply. The Plan is proceeding under section 1129(b)(2)(A)(i) and provides that "Choice will retain its validly perfected lien on all of the Debtor's assets, until such a time as the debt of Choice is paid in full." (Doc. # 69, p. 10.) The Plan fails to meet the requirements of section 1129(b)(2)(A)(i).

The Plan does not pay the full amount of Choice Bank's claims. The amount noted in the Plan is incorrect and understates the total amount owed to Choice Bank. The amount stated in the Plan does not account for any post-petition interest or the full amount of Choice Bank's reasonable

Page **10** of **11**

attorney's fees to which it is entitled under section 506(b). Post-petition interest also does not appear to be included, and thus, Choice Bank is not being paid on the full amount of its claim.

The Plan does not provide that Choice Bank retains its lien on all collateral. Specifically, the Plan seems to assume that the Debtor is permitted to continue to use cash collateral without further court order or permission of the creditors who have a lien on it. The Plan fails to meet the requirements of section 1129(b)(2)(A)(i).

## CONCLUSION

Pursuant to the foregoing reasons, Choice Bank respectfully requests that the Court deny confirmation of the Drain Services, Inc.'s Subchapter V Plan of Reorganization (Doc. No. 69), and any amendments or addendums thereto; and grant such other and further relief as this Court deems just and proper. Choice Bank reserves the right to make additional objections to the Plan and any amendments or addendums thereto at the hearing on the Plan.

Dated: December 7, 2023

/s/*John D. Schroeder*
**JOHN D. SCHROEDER  (ND ID #07147)**
jschroeder@northdakotalaw.net
ZIMNEY FOSTER P.C.
3100 South Columbia Road, Ste 200
Grand Forks, ND 58201
Phone: 701/772-8111   Fax: 701/772-7328
Attorneys for Choice Financial Group

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| In re: ) | |
| ) | Case No. 23-30352 |
| Drain Services Inc. ) | (Chapter 11) |
| ) | |
| Debtor. ) | |
| ) | |

## DECLARATION OF SERVICE

**BRENDA R. DIPERSIO,** a legal assistant in the office of Zimney Foster P.C., 3100 South Columbia Road, Ste. 200, Grand Forks, ND 58201, is of legal age and not a party to or interested in the above-entitled matter and declares, that on December 7, 2023, she served the following:

1. **CHOICE FINANCIAL GROUP'S OBJECTION TO CONFIRMATION OF DRAIN SERVICES, INC.'S SUBCHAPTER V PLAN OF REORGANIZATION**
2. **THIS DECLARATION OF SERVICE**

to the people who are Filing Users, by automatic e-mail notification pursuant to the Electronic Case Filing System and this notice constitutes service, and by sending the same in a postage paid envelope addressed to each person named below, at the address stated below, which is the last known address of the addressee, and by depositing said envelope in the United States mail in Grand Forks, North Dakota.

**Maurice VerStandig**
The Dakota Bankruptcy Firm
1630 1st Avenue N
Suite B PMB 24
Fargo ND 58102
mac@mbvesq.com
**Attorney for Debtor**

**Drain Services Inc.**
575 County Road 10
Mapleton ND 58059

**Sarah J. Wencil**
Office of the U.S. Trustee
Suite 1015 U.S. Courthouse
300 South Fourth Street
Minneapolis MN 55415
sarah.j.wencil@usdoj.gov

**Robert B. Rashcke**
Assistant U.S. Trustee
Suite 1015 U.S. Courthouse
300 South Fourth Street
Minneapolis MN 55415

And I declare, under penalty of perjury, that the foregoing is true and correct.

1

Dated: December 7, 2023 at Grand Forks, North Dakota

*/s/ Brenda R. DiPersio*
**BRENDA R. DIPERSIO**