**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**

| | |
|---|---|
| In re: ) | |
| ) | Case No. 23-30352 |
| Drain Services Inc. ) | (Chapter 11) |
| ) | |
| Debtor. ) | |
| ) | |

**CHOICE FINANCIAL GROUP'S OBJECTION TO CONFIRMATION OF DRAIN SERVICES, INC.'S AMENDED SUBCHAPTER V PLAN OF REORGANIZATION**

**Choice Financial Group**, ("Choice Bank") a creditor of the above-named debtor Drain Services, Inc. ("Debtor"), by and through its undersigned counsel, hereby objects to the confirmation of Drain Services, Inc.'s Amended Subchapter V Plan of Reorganization ("Amended Plan") (Doc. No. 108), upon the following grounds:

**I.  DEBTOR CANNOT SATISFY ALL ELEMENTS NECESSARY FOR CONFIRMATION OF THE AMENDED PLAN.**

The burden rests with the Debtors, as plan proponents, to establish all of the elements necessary for confirmation under Chapter 11 by a preponderance of the evidence. In re Bryant, 439 B.R. 724, 737-38 (Bankr. E.D. Ark. 2010). The Debtor must show "all of the applicable requirements of section 1129(a) of this title, other than paragraphs (8), (10), and (15) of that section, are met with respect to a plan . . . if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan." 11 U.S.C. § 1191(b). Here, the requirements of section 1129(a) as modified by 1191(b) have not been met by the Debtor.

Requirements for confirmation of a Chapter 11 Plan include, but are not limited to, the following:

1. The Amended Plan complies with the applicable provision of the Bankruptcy Code.

2. The proponent of the plan complies with the applicable provision of the Bankruptcy Code.

3. The plan has been proposed in good faith and not by any means forbidden by law.

4. Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan.

5. The plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan, including that the Debtor generally pay in to the plan its projected disposable income over a three or five year period.

11 U.S.C. §§ 1129 (a)(1), (2), (7), and (11); 11 U.S.C. § 1191(b), (c). Here, the Amended Plan fails to meet these requirements.

    a. ***The Amended Plan and the Debtor are not complying with the Applicable Provisions of the Bankruptcy Code, and thus do not meet Section 1129(a)(1) or (2).***

Sections 1129(a)(1) and (2) of the Bankruptcy Code provide that both the plan and the proponent of the plan must comply "with the applicable provisions" of the Bankruptcy Code. Choice Bank objects to the Amended Plan because the Amended Plan has a number of deficiencies and the Debtor has failed to comply with the Bankruptcy Code.

First, the Debtor is not complying with the Bankruptcy Code and this court's prior orders on use of cash collateral. The prior objection that Choice Bank made to the Debtor's original plan on this point is incorporated herein by reference. (Doc. # 86, p. 3.)

Additionally, the Debtor has not abided by the court's order to pay adequate protection payments to Choice Bank. Debtor has failed to pay the adequate protection payment of $5,934.03 that was due on January 15, 2024, under the terms of the Court's *Order Granting Debtor's Motion for Leave to Use Cash Collateral* (Doc. # 64), as modified by the Court's *Order on Stipulation for Modification of Order Granting Debtor's Motion for Leave to Use Cash Collateral* (Doc. # 107), and as further modified by the parties' *Stipulation for Continued Use of Cash Collateral* (Doc. # 111).

Finally, the Debtor is not following the requirements of the Bankruptcy Code on the retention of professionals. While Choice Bank does not have any objection in general to the retention of an accountant for tax preparation services, it appears that Debtor has not obtained court approval to retain Arrow Advisors as a professional in this case in violation of Bankruptcy Code section 327.

Second, the Debtor fails to provide for the payment of its projected disposable income into the Amended Plan. Debtor's projections indicate significant reserves for each year, yet does not propose to pay those to creditors. (Doc. # 108-9.) Debtor's projections indicate $338,692 in reserves/miscellaneous over the course of the Amended Plan. The Debtor's indicated mechanism for retaining the Cash Overflow Mechanism does not cure the failure to pay its anticipated disposable income into the Amended Plan.

Additionally, the Amended Plan provides that the Debtor retains the right to re-amortize the payments on Choice Bank's claim if the Debtor obtains payment of an insurance claim that is

Page **3** of **9**

part of Choice Bank's collateral. (Doc. # 108, p. 16.) The ability of the Debtor to re-amortize the payments to Choice Bank further shows that the Debtor will not be dedicating its projected disposable income to Plan payments.

Finally, with regard to payment of Debtor's anticipated disposable income, the Amended Plan still fails to accomplish this. The Amended Plan provides for the payment of $10,050 per month into the Amended Plan. Of that amount, $2,562.00 is earmarked for the claim of the SBA, leaving $7,488 for the remaining creditors. Excluding the SBA claim, the remaining creditors total approximately $520,783.33, according to the Debtor's Exhibit A to the Amended Plan (Doc. # 108-1.) With that, the Amended Plan only intends to pay out $449,280 over the course of the Amended Plan ($7,488 per month for 60 months) but at the same time anticipate reserves of $338,692, for a total $787,972 in anticipated disposable income to pay creditors (other than SBA). Given this, there is no reason the Amended Plan needs to amortize claims over a 7 year period, and thus, the Amended Plan fails to pay creditors the Debtor's anticipated disposable income.

Third, the Debtor has failed to file accurate schedules in the case. The prior objection that Choice Bank made to the Debtor's original plan on this point is incorporated herein by reference. (Doc. # 86, pp. 4-5.)

Finally, the Amended Plan at section 8.15 purports to give the court authority to approve a modified plan without giving notice or conducting a hearing. The prior objection that Choice Bank made to the Debtor's original plan on this point is incorporated herein by reference. (Doc. # 86, p. 5.)

    b. ***The Amended Plan has not been proposed in good faith, and thus does not meet Section 1129(a)(3).***

Section 1129(a)(3) of the Bankruptcy Code requires that a "plan [be] proposed in good faith and not by any means forbidden by law." To satisfy this good faith test, the debtor must show

Page **4** of **9**

that "there is a reasonable likelihood that the plan will achieve a result consistent with the standards prescribed under the Code." Hanson v. First Bank, 828 F2d 1310, 1315 (8th Cir. 1987). Choice Bank believes that Debtor cannot meet its burden by satisfying the good faith requirement by a preponderance of the evidence.

1) **The Amended Plan permits Debtor to modify the Amended Plan in contravention of section 1193 of the Bankruptcy Code.**

As noted above, section 8.15 of the Amended Plan violates the requirements of section 1193 of the Bankruptcy Code.

2) **Debtor has inappropriately used cash collateral for the benefit of the Debtor's principals.**

The Debtor's use of cash collateral has exceeded that permitted in the court's prior orders, as noted above, and Debtor has failed to make agreed upon and ordered adequate protection payment to Choice Bank. The prior objection that Choice Bank made to the Debtor's original plan on this point is incorporated herein by reference. (Doc. # 86, pp. 7-8.) Additionally, the Debtor has continued to spend liberal sums on "T&E" category items and cash withdrawals since the hearing before this Court on December 12, 2023. Choice Bank additionally continues to object to the prior overspending that was detailed in evidence at the prior hearing on December 12, 2023. The cash withdrawals and T&E items not related to any out-of-town travel that have occurred since the December 12, 2023 hearing are the following:

| Date | Description | Amount |
|---|---|---|
| 1/22/2024 | Pending: DAIRYQUEEN #15521WEST FARGO NDUS | $17.90 |
| 1/22/2024 | Pending: DOMINO'S1862 320-235-8277NDUS | $60.00 |
| 1/22/2024 | PSF373 SQ *TACOSHOP Fargo ND | $16.65 |
| 1/12/2024 | PSF367 TACO BELL037587 FARGO ND | $21.15 |
| 1/10/2024 | SELF LENDER INCPAYMENTS1473596202 | $150.00 |
| 1/8/2024 | PSF372 CHIPOTLEONLINE 949-524-4000 CA | $45.00 |
| 1/5/2024 | PSF361 E&G 1058FARGO FARGO ND | $64.05 |

| Date | Description | Amount |
|---|---|---|
| 1/2/2024 | PS4455FIREHOUSE SUBS1101 QSR FARGO ND | $37.78 |
| 12/14/2023 | PS2550 CHIPOTLEONLINE 949-524-4000 CA | $40.00 |
| 12/13/2023 | IN9018 1401 13thAve E West FargoND | $503.00 |
| 12/13/2023 | PS4563 DAIRYQUEEN #15521WEST FARGO ND | $51.53 |
| | Total | $1,007.06 |

For the above-stated reasons, Choice Bank alleges that the Debtor cannot satisfy demonstrating that the Amended Plan was proposed in good faith.

c.  *The Amended Plan is not Feasible.*

In order for the Amended Plan to be confirmed, the Amended Plan must be feasible. The prior objection that Choice Bank made to the Debtor's original plan on this point is incorporated herein by reference. (Doc. # 86, pp. 8-9.)

In addition, the Debtor's own performance while this case has been pending shows that Debtor's projections are not credible. The Debtor's budget projections for performance in the Fourth Quarter of 2023 (Doc. # 50) in support of its motion for use of cash collateral indicated that the Debtor anticipated income of $481,000 for the quarter. As the Debtor's bank ledgers have shown over that period, the Debtor's income was significantly below that figure, all while the Debtor's overall spending was much higher. Deposits back to the commencement of the case are the following:

| Date | Description | Amount |
|---|---|---|
| 10/26/2023 | MOBILE DEPOSIT | $5,000.00 |
| 10/30/2023 | MOBILE DEPOSIT | $7,000.00 |
| 11/15/2023 | MOBILE DEPOSIT | $5,000.00 |
| 11/20/2023 | PS4453 STRATACORPORATIONGRAND FORKS ND | $16.16 |
| 11/21/2023 | MOBILE DEPOSIT | $31,650.00 |
| 12/15/2023 | PSF378LIENITNOW COM888-5436765 FL | $47.95 |
| 12/18/2023 | PS4451 Instanttransfe PasadenaCA | $5,000.00 |
| 12/18/2023 | PS4451 Instanttransfe PasadenaCA | $5,000.00 |

| Date | Description | Amount |
|---|---|---|
| 12/20/2023 | Intuit TRANSFER9002000202 | $5,000.00 |
| 12/22/2023 | Intuit TRANSFER9002000202 | $5,000.00 |
| 1/2/2024 | Intuit TRANSFER9002000202 | $7,300.00 |
| 1/9/2024 | Intuit TRANSFER9002000202 | $5,600.00 |
| 1/10/2024 | MOBILE DEPOSIT | $700.00 |
| 1/12/2024 | RED RIVERBIOREFPAYABLES9580009001 | $1,250.00 |
| 1/17/2024 | Intuit TRANSFER9002000202 | $1,250.00 |
| 1/19/2024 | MOBILE DEPOSIT | $8,050.00 |
|  | **Total** | $92,864.11 |

Debtor's Amended Plan is not feasible because Debtor's performance while this case has been pending shows they will not be able to generate close to their projected revenue.

### d. *The Amended Plan Fails to Provide Choice Bank with Adequate Protection.*

The Amended Plan does not provide Choice Bank adequate protection in return for the use of its cash collateral and otherwise under the Amended Plan. The prior objection that Choice Bank made to the Debtor's original plan on this point is incorporated herein by reference. (Doc. # 86, p. 9.) Additionally, the amortization schedule for the repayment of Choice's claim is not reasonable in light of the nature of the equipment collateral and its continued use and depreciation. Choice Bank objects to a seven-year amortization on its claim. The Debtor previously testified that the equipment is specialized and has limited marketability. With continued use over the course of the Amended Plan, the equipment will continue to depreciate, leaving Choice Bank without any collateral.

### e. *The Amended Plan discriminates unfairly, and is not fair and equitable, with respect Choice Bank.*

First, the Amended Plan fails to provide that the payment of its projected disposable income will be paid into the plan for the benefit of the Debtor's creditors, as required by section 1191(c)(2)(a). The Amended Plan provides that reserves/miscellaneous that are being projected

by the Debtor are kept by the Debtor with an uncertain mechanism for repayment if reserves exceed a certain threshold.

Second, the Amended Plan does not meet the requirements of section 1129(b)(2)(A) of the Bankruptcy Code as to Choice Bank. The options available to a plan proponent under section 1129(b)(2)(A) are as follows:

> The **secured creditor retains its lien** on the property and receives deferred cash payments; 11 U.S.C. § 1129(b)(2)(A)(i);
>
> The debtor sells the property free and clear of liens subject to 11 U.S.C. 363(k) – which permits the **creditor to credit-bid at the sale and provides the creditor with a lien on the sale proceeds.** 11 U.S.C. § 1129(b)(2)(A)(ii); or
>
> The plan may provide the secured creditor with the **"indubitable equivalent"** of its claim. 11 U.S.C. § 1129(b)(2)(A)(iii)

While any one of these three alternatives are available avenues to cramdown an objecting secured creditor, the "indubitable equivalent" alternative is not available for situations that squarely fall in either section 1129(b)(2)(A)(i) or section 1129(b)(2)(A)(ii). RadLax Gateway Hotel, LLC v. Amalgamated Bank, 132 S.Ct. 2065, 2070-71 (2012).

Here, the Amended Plan does not comply with any of the alternatives. The Amended Plan is not a liquidating plan to which section 1129(b)(2)(A)(ii) would apply. The Amended Plan is proceeding under section 1129(b)(2)(A)(i) and provides that "The claims of Choice and Bank of the West will continue to be subject to their respective security agreements and liens (the "Security Instruments"), except any provision of said Security Instruments providing for a maturity date on the subject indebtedness, or calling for the Debtor's insolvency or seeking bankruptcy protection to be an event of default, shall be void and of no effect. Further, to the extent the Security Instruments conflict with this Plan, any order of this Honorable Court, or applicable bankruptcy

law, the Plan and/or said order(s) and/or law shall control." (Doc. #108, p. 12.) The Amended Plan fails to meet the requirements of section 1129(b)(2)(A)(i).

The Amended Plan does not pay the full amount of Choice Bank's claims. The amount noted in the Amended Plan is incorrect and understates the total amount owed to Choice Bank because the Debtor has failed to timely make the adequate protection payment that was due on January 15, 2024. The amount stated in the Amended Plan also does not provide the full amount of Choice Bank's reasonable attorney's fees to which it is entitled under section 506(b).

The Amended Plan does not provide that Choice Bank retains its lien on all collateral. Specifically, the Amended Plan seems to assume that the Debtor is permitted to continue to use cash collateral without further court order or permission of the creditors who have a lien on it. The Amended Plan fails to meet the requirements of section 1129(b)(2)(A)(i).

## CONCLUSION

Pursuant to the foregoing reasons, Choice Bank respectfully requests that the Court deny confirmation of Amended Subchapter V Plan of Reorganization ("Amended Plan") (Doc. No. 108), and any amendments or addendums thereto; and grant such other and further relief as this Court deems just and proper. Choice Bank reserves the right to make additional objections to the Amended Plan and any amendments or addendums thereto at the hearing on confirmation.

Dated: January 23, 2024

/s/ *John D. Schroeder*
**JOHN D. SCHROEDER  (ND ID #07147)**
jschroeder@northdakotalaw.net
ZIMNEY FOSTER P.C.
3100 South Columbia Road, Ste 200
Grand Forks, ND 58201
Phone:  701-772-8111   Fax:  701-772-7328
Attorneys for Choice Financial Group